## *J. F. KINNEY, ASSIGNEE, v. THE COMMISSIONERS OF HAMILTON CO.

1. A COURT WILL CONSTRUE AN AMBIGUOUS CONTRACT AS THE PARTIES CONSTRUE IT.

When parties themselves give a construction to a contract of uncertain meaning, courts will give the contract that construction that the parties gave it.

2. COURTS IN CONSTRUING CONTRACTS WILL ENDEAVOR TO DO JUSTICE BETWEEN PARTIES.

The people, as a body, can only act toward one of their number in honesty and fairness: and whether a construction of a contract makes it reasonable and just, or otherwise, is a matter to be taken into consideration by a court, and such constru tion will be given to the contract, if possible, which leads to justice between the parties.

ERROR to the Court of Common Pleas of Hamilton county.

SWING, J.

The plaintiff in error, as assignee of Henry Suing, brought this action against the commissioners of Hamilton county, in the court of common pleas of said county, for a balance due for the building of the Mount Airy free turnpike.

A trial was had in the court of common pleas, and judgment was given for the defendants.

This action was brought to reverse said judgment, several errors being assigned.

In the year 1882, Henry Suing, the assignor of plaintiff, entered into a contract with the commissioners of Hamilton county, Ohio, for the building of the Mount Airy free turnpike. The terms of a contract were contained in a bid made by said Suing, upon a blank furnished and prepared by the county. It commenced as follows:

"SPECIFICATIONS.—For building a proposed road from the corporation line of Cincinnati to Mount Airy, to be called the Mount Airy free turnpike."

The first paragraph says: "The contractor will be required, at his own expense, to furnish all the labor and materials as herein provided or as hereinafter ordered necessary for the construction of this road. All the work must be done under the direction of the engineer in charge of the work, or his assistant, according to the plan, profile, and these specifications, excepting a change of the center line noted on plan and profile."

Following this are paragraphs as to grading, ditching, metal, drains, masonry, etc.

Article 14 is as follows:

## "CHANGES IN THE WORK.

"The right to increase or decrease the quantities, especially in foundations, and also to change the method of construction in any particular, is reserved by the commissioners and engineer, and no extras or claims will be allowed on account of said changes, but payment will be made for the actual amount of work done at the rates mentioned in the successful bid."

After this follows:

## "FORM OF PROPOSAL.

"The undersigned, having examined the grounds, plans, detailed drawings' profile and specifications for the construction of the Mount Airy road, hereby

Kinney, Assignee, v. Commissioners.

proposes to do the work in all respects as required, and to the satisfaction of the engineer and the commissioners of Hamilton county at the following prices:

| Kind of work. | Approximate quantities. | Amount. |
|---|---|---|
| Grading, per lineal rod of road-bed | 8,990 ft. | $6.70 |
| Masonry, per perch of 25 cubic feet | 408 p. | 4.00 |
| Broken stone, perch of 25 cubic feet | 5,660 p. | .75 |
| Drain pipe, per lineal foot (18 in.) in position | 350 ft. | 2.25 |

(Signed,) HENRY SUING."

The estimates of approximate quantities had been prepared by the county, and everything was printed in the contract except the figures for amount, which were inserted by Suing.

Prior to receiving bids the commissioners had surveyed and located the road, and had set stakes showing grade, fills, and cuts along the line, and had made a profile of the same, which was for the inspection of bidders; a calculation of the amount of excavation, fills and masonry had been made which was intended, among other things, as a guide for bidders.

During the progress of the work, certain changes were made in the location of the road, which we may assume for the purposes of this opinion, increased the number of yards of excavation and fill from about 39,200 cubic yards as required by the original location, to about 50,000 cubic yards, as actually done under the change; by the change in the location the length of the road was increased, it would seem a few feet.

By paragraph 11 of the contract, monthly estimates were to be made, and 80 per cent. of the work done paid for, reserving 20 per cent. of the final estimate.

During the progress of the work twelve estimates were made by the county engineer, and payments made thereon by the county. These estimates were made on the number of cubic yards of grading, equal to so many rods at $6.70; this appears to have been arrived at by taking the price per lineal rod, viz., $6.70, as awarded, and taking the number of yards, as shown by the original line as located and estimated, and finding what that would amount to per cubic yard; this amount was found to be 14 cents per cubic yard. The first estimates were in this form: "4,042 yds. ex., equal to 86 rods, at $6.70." The later ones were in this form: "19,952 yards grading, at 14 cents."

These twelve estimates were made by I. A. Smith, assistant engineer.

The final estimate was made by J. M. Harper, county engineer, and was as follows:

| | | |
|---|---|---|
| Grading, 545 lineal rods, at $6.80 | $3,651 | 50 |
| Slips 4,480 cubic yards, at 14 cents | 627 | 20 |
| Masonry, 548 33-100 perches, at $4.00 | 2,193 | 32 |
| Broken stone, 5,221 80-100 perches, at 75 cents | 3,916 | 35 |
| Drain pipe, lineal feet, 826—$2.25 | 1,858 | 50 |

The claim of the plaintiff was that he should be paid for the excavation of the actual amount of the work done, not measured by the lineal rod, but by the quantity, at so much per cubic yard. The defense of the county was that the contract was by the lineal rod, and that it made no difference how much work was actually done; that the county, by the contract, had the right to change the grade and location of the road, and if by said change the actual amount of work done was much more than it would have been if constructed according to the original location, it was not to be considered.

On the trial, in the admission of evidence and in its instructions to the jury, the court gave the contract the construction claimed for it by the attorneys for the county.

Was this construction correct?

In our opinion, it was not.

It is not a contract, as it appears to us, free from ambiguity and uncertainty. If this be conceded, we might well rest our decision on the conduct of the parties in regard to the construction that the parties themselves put on the contract.

For when parties themselves give a construction to a contract of uncertain meaning, courts will give the contract that construction that the parties gave it.

During the progress of the work, twelve monthly estimates were made by the county, and the same were accepted by the plaintiff under this contract, according to which the contract was construed to be that the plaintiff should receive pay for the actual amount of work done, not measured by the lineal rod, but by the quantity of excavation and fill made.

This we believe to be a fair and reasonable construction to be given the contract. It must be admitted that in terms such is not stated clearly in the contract. What we want to ascertain is the intention of the parties, and in our endeavors to ascertain this we must take into consideration the whole surroundings of the parties, the purposes which the parties had in view. Whether a construction of a contract makes it reasonable and just, or otherwise, is a matter to be taken into consideration, and such construction will be given, if possible, which leads to justice between the parties.

In the making of this contract no dishonest purpose can be ascribed to the county. The people, as a body, can only act toward one of their number in honesty and fairness; and yet, if we construe this contract as claimed by the county, a different conclusion would be forced upon us. Under the "Form of Proposal," the county had printed: "The undersigned having examined the grounds, plans, detailed drawings, profile and the specifications for the construction of the Mount Airy road, hereby proposes to do the work in all respects as required."

Then follows estimates of quantities. This was in effect saying to the bidders, the county proposed to build this road in accordance with these plans; but in another place the right to change the work is reserved to the county. It is reasonable to suppose that these changes were not contemplated by the county at that time, but were such changes as might seem best as the work progressed. In everything except the grading, the changes in no way could affect either party. If, instead of 408 perch of masonry, as estimated, by the change 548 33-100 perch was done, the contractor got paid for it, and the county got the work, and so with the broken stone and drain pipe; but when it comes to grading, the contractor is asked to do more than twenty-five per cent more work by reason of the change, and without any additional compensation. Can it be claimed that this was a contingency that was contemplated by the county at the time of the making of the contract?

We have a right to assume that the contractor was a person of some intelligence, possibly a man of ordinary intelligence; if so, can it be supposed that he would enter into a contract of such a character?

He provides that if he does one part of the masonry or stone, or one foot of pipe more by reason of any change, he shall be paid for it, and yet he may be called upon to do twenty-five per cent more grading, and yet receive no additional compensation.

Assuming the purposes of the county to be honest, and allowing some intelligence to the contractor, we can not believe that the minds of the parties ever met on such a contract.

It may be that there was no "concurrent declaration of intention" between the parties as to the grading, and if this be true, the plaintiff would be entitled to recover for the value of the work; but as the parties themselves construed the contract, we think that that construction should be carried out. What the parties meant by the words used in paragraph 14, under "changes in the work," we have been unable to ascertain with any degree of certainty and satisfaction to our minds. What is meant when they say, "and no extras and claims will

be allowed on account of said changes, but payment will be made for the actual amount of work done at the rates mentioned in the successful bid?"

This, it is said, is to apply especially to "foundations." What is meant by the term "foundation" we are unable to say, for the specifications furnish no explanation. The same may be said of the term "extras."

As applied to the grading, what is the meaning of the last sentence, "but payment will be made for the actual amount of work done at the rates mentioned in the successful bid?"

It was not likely that the length of the road would be materially changed, but the actual amount of the grading might be greatly changed, and this is what he was to receive pay for.

The parties themselves for a long time so construed it, and while it is not free from doubt, it seems to us to be the more reasonable and sensible construction to be given it.

If we are correct in our judgment on the contract, it follows that the court erred in rejecting evidence offered by plaintiff, and in its charge to the jury; for these reasons, the judgment below will be reversed, with costs, and remanded for further proceedings.

SMITH and COX, JJ., concur.

(Affirmed by the Supreme Court without report.)